**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

| | |
|---|---|
| PHILIPS MEDICAL CAPITAL, LLC | PLAINTIFF |
| V. | CIVIL ACTION NO. 2:10CV092-DAS |
| P&L CONTRACTING, INC. d/b/a PREFERRED IMAGING, LLC; JOHN PARK; ANTHONY LEWIS | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on the plaintiff's Renewed Motion for Summary Judgment (# 57). After considering the motion and the response thereto, the court finds as follows:

**I. FACTUAL BACKGROUND**

This is a breach of contract action brought by the Plaintiff, Philips Medical Capital, LLC ("Philips"), against the Defendants, P&L Contracting, Inc. d/b/a Preferred Imaging, LLC ("P&L"); John Park; and Anthony Lewis. On November 8, 2006, Philips and P&L entered into a Master Lease Agreement and Master Lease Schedule for a Philips Intera Pulsar Mobile 4 Channel 1.5T MR w/Customer Care and 48' Calutech Mobile Solutions Mobile Unit. Defendants John Park and Anthony Lewis executed continuing Guarantees in favor of Philips, promising punctual payment and performance of any and all of the obligations of P&L to Philips. Pursuant to the Master Lease Schedule, P&L was to make three monthly payments at $0.00 followed by nine monthly payments at $25,437.44 plus applicable taxes followed by forty-eight equal consecutive payments in the amount of $36,156.27 plus applicable taxes.

The parties subsequently executed an Addendum to the Master Lease Schedule, dated the same day as the Master Lease Agreement and Master Lease Schedule. This Addendum removed the three-month deferral period and increased the amount financed because it included the costs of a portion of the mobile interim unit provided by DMS Imagining, Inc. Anthony Lewis – Chief Executive Officer and Vice President of P&L – executed the Addendum and was authorized to do so pursuant to the Certificate of Secretary signed by Defendants Park and Lewis on November 8, 2006. On March 29, 2007 and again on April 4, 2007, Philips notified P&L of changes in the payment schedule. According to Philips, the revisions were made in accordance with Section 5(b) of the Master Lease Schedule to reflect changes in similar term United States Treasury Notes. The payment change notification on April 4, 2007, required P&L to make one payment of $25,437.44 plus applicable taxes followed by forty-eight consecutive monthly payments of $35,929.13 (including service) plus applicable taxes. The Philips Pulsar was delivered to P&L's offices on or about April 4, 2007.

In June 2009, P&L began falling behind on its payment obligations to Philips and by December 2009, failed to make payments at all. On March 18, 2010, P&L informed Philips that it would be terminating the Master Lease Agreement and surrendering the Philips Pulsar to Philips. On April 10, 2010, Philips sent a final invoice to P&L, which included amounts for past due payments, service fees, and late fees, for a total amount of $298,243.26. Philips then retrieved the Philips Pulsar and sold it for $280,000, incurring expenses for storage and maintenance in the amount of $17,069.64. The net proceeds from the sale of the Philips Pulsar was $262,930.36. According to Philips, the Booked Residual Value (BRV) of the Philips Pulsar at the time of sale was $240,900. In April 2010, Philips exercised its option to accelerate the remaining balance pursuant to Paragraph 14(a) of the Master Lease Agreement.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure if "[t]here is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). To determine whether there is a genuine dispute as to any material fact, the court must consider "all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The court must make all reasonable inferences in favor of the non-moving party, *Reeves*, 530 U.S. at 150;

3

"however, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

### III. ANALYSIS

*A. Breach of Contract*

Because this case is before the court pursuant to its diversity jurisdiction, the court must apply state substantive law. *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938). According to the Mississippi Supreme Court, questions regarding the construction and interpretation of contracts are questions of law. *See Warwick v. Gautier Util. Dist.*, 738 So. 2d 212, 214 (Miss. 1999). If the language of the contract "is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout," then the court looks to the instrument itself as written. *See Farragut v. Massey*, 612 So. 2d 325, 329 (Miss. 1992) (citing *Sumter Lumber Co. v. Skipper*, 184 So. 296, 298-99 (1938)). "Under Mississippi law, where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (quoting *Heritage Cablevision v. New Albany Elec. Power Sys.*, 646 So. 2d 1305, 1312 (Miss. 1994)). In order to establish a breach of contract claim, a plaintiff must prove: (1) the existence of a valid and binding contract; (2) that the defendants have broken, or breached it; and (3) that the plaintiff has been damaged thereby monetarily. *See Favre Prop. Mgmt., LLC* v. *Cinque Bambini*, 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004) (citing *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)).

In the present case, the Defendants do not dispute that the Master Lease Agreement and Master Lease Schedule executed by P&L are valid and binding contracts, clear and unambiguous

on their face. Rather, the Defendants argue there was "no meeting of the minds or a contract between [Philips and P&L]" because "[t]he proposed addendums are nothing more than additional offers by Philips with no corporate acceptance by P&L." This argument is without merit. First, Defendant Lewis was authorized to execute the Addendum on behalf of P&L pursuant to the unambiguous language of the Certificate of the Secretary, which both he and Defendant Park signed on November 8, 2006. Second, the correspondence sent to P&L on March 29, 2007 and April 4, 2007, did not constitute additional offers or addendums to the Master Lease Agreement as the Defendants contend. Rather, they were merely notifications of payment changes made pursuant to Section 5(b) of the Master Lease Schedule. Because the Master Lease Agreement is a valid and binding contract, no further "meeting of the minds" was required before Philips adjusted the payment schedule to reflect changes in United States Treasury Notes.

The undisputed evidence before the court demonstrates that P&L breached the Master Lease Agreement. Paragraph 13 of the Master Lease Agreement states that a Lessee is in default if the "Lessee shall fail to pay any payment or other sum when due and such failure is not cured within (10) days of such due date." It is not disputed that after P&L fell behind on its payment obligations in the amount of $100,000, it unilaterally terminated the Master Lease Agreement and surrendered the Philips Pulsar. According to Paragraph 2 of the Master Lease Agreement, "A lease may not be terminated or cancelled for any reason whatsoever, except as expressly provided in the lease." There is no provision under the Master Lease Agreement that allowed P&L to terminate or cancel the lease prior to the expiration of the payment schedule. As such, there is no genuine issue of material fact that P&L breached the Master Lease Agreement.

Consequently, the court looks to the damages suffered as a result of the breach. Philips suffered monetary damages in the amount of $896,638.36. At the time P&L surrendered the Philips Pulsar, twenty-three payments remained at a base price of $26,975.02 ($25,210.30 + 7% sales tax). The total remaining payments due under the Master Lease Agreement is $620,425.46 (23 x $26,975.02). The total accelerated amount due under the Master Lease Agreement is $896,638.36, which is the sum of the total outstanding balance of $298,243.26, plus the total remaining payments of $620,425.46, plus the BRV of $240,900, less the net proceeds from the sale of the Philips Pulsar of $262,930.36.

Under the continuing Guarantees executed by Defendants Lewis and Park, each Defendant promised to pay and guaranteed payment and performance of any and all obligations and liabilities of P&L to Philips. The court concludes that both Guarantees are valid contracts, clear and unambiguous on their face. The undisputed evidence demonstrates that Defendants Lewis and Park are both in breach of their Guarantees by failing to prevent P&L from breaching its obligations under the Master Lease Agreement. As a result of the breach, Philips has suffered monetary damage.

### B. Attorney's Fees

As part of its summary judgment, Philips also seeks reasonable attorney's fees. Pursuant to Paragraph 14 of the Master Lease Agreement, "Lessee shall be responsible for all costs and expenses incurred by Lessor in the exercise of its remedies hereunder, including without limitation, reasonable attorneys' fees." Under Mississippi law, "Where a contractual provision concerning the award of attorney's fees is at issue, this court will apply its rule concerning the interpretation of any contract, which is to 'enforce a contract when its terms are clear and unambiguous.'" *Hamilton v. Hopkins*, 834 So. 2d 695, 700 (Miss. 2003) (citing *Ivison v. Ivison*,

762 So. 2d 329, 334 (Miss. 2000)). Section 9-1-41 of the Mississippi Code provides the following general rule as to the awards of attorney's fees:

> In any action in which a court is authorized to award reasonable attorney's fees, the court shall not require the party seeking fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided, however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

Miss. Code Ann. § 9-1-41.

Philips submitted an affidavit and invoices to support its demand of $21,635.32 in attorney's fees and expenses, and the Defendants offered nothing to challenge the accuracy of this exhibit. Based on the information before it, the court finds that Philips' demand is reasonable and awards $21,635.32 in attorney's fees and expenses to Philips.

### C. Pre-Judgment and Post-Judgment Interest

Philips requests that it be awarded pre-judgment interest dating from March 18, 2010, when P&L sent notice of its termination of the Master Lease Agreement and its intention to surrender the Philips Pulsar. The Defendants did not respond to Philips' request.

The issue of prejudgment interest is governed by applicable state law. *Canal Ins. Co. v. First Gen. Ins. Co.*, 901 F.2d 45, 47 (5th Cir. 1990). In *Stockstill v. Gammill*, the Mississippi Supreme Court set forth the appropriate criteria for determining when an award of pre-judgment interest is proper:

> It is well settled that in Mississippi a [trial judge] is afforded discretion in deciding whether to award prejudgment interest. "An award of prejudgment interest rests in the discretion of the awarding judge. Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith. No award of prejudgment interest may rationally be made where the principal amount has not been fixed prior to judgment."

*Stockstill v. Gammill*, 943 So. 2d 35, 50 (Miss. 2006) (quoting *Coho Res. v. McCarthy*, 829 So. 2d 1, 19-20 (Miss. 2002)); *see also Upchurch Plumbing, Inc. v. Greenwood Util. Comm.*, 964 So. 2d 1100, 1117 (Miss. 2007). Further, "For prejudgment interest to be awarded, the party must make a proper demand for the interest in the pleadings, including the date that it was initially due." *Microtek Med., Inc. v. 3M Co.*, 942 So. 2d 122, 132 (Miss. 2006). At the time P&L breached the Master Lease Agreement, the only outstanding matter of damages was the amount Philips would recover from the sale of the Philips Pulsar. Because the sale was handled shortly after the lawsuit was filed, the court finds that the amount of damages is sufficiently liquidated to justify an award of pre-judgment interest. Philips meets the second requirement for pre-judgment interest because it clearly requested "applicable interest from the date of default " in its Complaint. As such, the court finds that Philips is entitled to pre-judgment interest at the rate of eight-percent per annum.[1]

While state law governs the award of pre-judgment interest in this federal diversity action, *Weitz Co., Inc. v. Mo-Kan Carpet, Inc.,* 723 F.2d. 1382, 1385 (8th Cir. 1983), post-judgment interest is allowed under federal law. 28 U.S.C. § 1961. *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.,* 848 F.2d 613 (5th Cir. 1988).

### IV. CONCLUSION

Accordingly, because there is no genuine issue of material fact, summary judgment is appropriate, and Plaintiff's motion shall be GRANTED in the principal amount of $896,638.36. The court further finds that Defendant Park and Defendant Lewis are personally liable according to the terms of the personal guaranty agreements executed on November 8, 2006. Finally, the

---

[1] *See* MISS. CODE ANN. § 75-17-1, which provides, in part: "The legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum, calculated according to the actuarial method, but contracts may be made, in writing, for payment of a finance charge as otherwise provided by this section or as otherwise authorized by law."

court awards Philips $21,635.32 in attorney's fees and costs, pre-judgment interest at the rate of eight-percent per annum, and post-judgment at the current federal rate.

A judgment in accordance with this opinion will issue this day.

This the 13th day of March, 2012.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE